UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GORDAN CASE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-7390** |
| **ANPAC LOUISIANA INSURANCE CO.** | **SECTION: "K"(2)** |

**and**

| | |
|---|---|
| **IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-4182** |
| **PERTAINS TO** <br> *Chamberlain* **(06-6479) - PENDING DESIGNATION** | **SECTION: "K"(2)** |

<u>**ORDER AND REASONS**</u>

Before the Court are two motions to remand in two separate actions.[1] The first Motion to

---

[1] *See* Rec.Doc.No. 5, *Case v. ANPAC Louisiana Ins. Co.*, No. 06-7390 (E.D. La. removed October 5, 2006); and Rec.Doc.No. 1497, *Chamberlain v. Louisiana Farm Bureau Casualty Ins. Co.*, No. 06-6479 (E.D. La. removed Sept. 26, 2006). The *Chamberlain* action has been consolidated into the umbrella created in this Court for the purposes of handling the Hurricane Katrina litigation. *See In Re:Katrina Canal Breaches Consolidated Litigation*, No. 05-4182

Remand (Rec.Doc.No.5) is brought by Plaintiffs Gordon and Tanjha Case ("Cases") in their lawsuit against ANPAC Louisiana Insurance Company, ("ANPAC"). Plaintiffs oppose removal claiming that there is no subject matter jurisdiction over the proceeding under 28 U.S.C. §§ 1441(e)(1)(B) and 1369 ("Multiparty, Multiforum, Trial Jurisdiction Act" or "MMTJA").

The second Motion to Remand (Rec.Doc.No. 1497) was filed by Plaintiffs Shirley and Robert Chamberlain ("Chamberlains") in their action against Louisiana Farm Bureau Mutual Insurance Company ("Farm Bureau").[2] Defendant also allege jurisdiction and removal under the MMTJA.[3] After reviewing the pleadings, memoranda, and relevant law as well as hearing oral argument, the Court finds that these actions were not properly removed under 28 U.S.C. § 1441(e)(1)(B), and thus, the Court remands these proceedings for the reasons assigned below.

_____

(E.D. La. filed Sept 19, 2005). The instant Motion to Remand was accordingly redocketed in as Rec.Doc.No. 1497, and the Opposition as Rec.Doc.No. 1520.

[2] Louisiana Farm Bureau Mutual Insurance Company was improperly designated in the lawsuit as Louisiana Farm Bureau Casualty Insurance Company.

[3] Farm Bureau also removes based on 28 U.S.C. 1441(c) contending that Plaintiffs have alleged a federal question in their request for "penalties and attorneys fees under the applicable provisions of state and federal law." *See* Notice of Removal, Petition, at ¶ 13 (Rec.Doc.No. 1). However, Defendant admitted during argument that there is no cognizable claim for such relief under federal law. Thus, the Court finds that the exercise of federal question jurisdiction under 28 U.S.C. § 1331 would be inappropriate based on this allegation.

# I. BACKGROUND

**A.     The Cases**

        The Cases instituted the state court action on August 22, 2006, against ANPAC

Louisiana Insurance Company ("ANPAC") in Civil District Court, Parish of Orleans, Louisiana,

seeking a declaratory judgment as well as damages in connection with destruction of their home

during and in the aftermath of Hurricane Katrina. The parties are both domiciled in Louisiana.

Specifically, Plaintiffs aver the following:

> The strength and magnitude of Katrina's violent winds leaves
> little doubt to consider that the high velocity wind force was the
> "efficient proximate cause" of the damage to petitioners' building
> and ancillary structures and total destruction/loss of petitioner's
> building and ancillary structures.

*See* Notice of Removal, Exhibit C, at ¶ 5 (Rec.Doc.No. 1).

        In addition to a request for the full value of the policy and other damages, Plaintiffs also

request 1) a declaration that damage due to "storm surge" is not excluded by the policy; 2) a

declaration that the "flood" exclusion is inapplicable and ambiguous; and 3) a declaration that

Louisiana Valued Policy Law[4] applies to the instant matter. *See* Notice of Removal, Exhibit C, at

¶ 24 (Rec.Doc.No. 1).

        Defendants, on the other hand, attribute the loss to the flooding that came as a result of the

---

[4] LA. REV. STAT. ANN. § 22:695 (2006).

levee breaches.[5] *See* Notice of Removal, ¶ 14 (Rec.Doc.No. 1). This risk is allegedly not covered under the policy by virtue of the flood exclusion. *Id.*

## B.      The Chamberlains

The Chamberlains also brought this action in Civil District Court in Orleans Parish, Louisiana, against their insurer Farm Bureau. *See* Notice of Removal (Rec.Doc.No. 1).[6] The parties are both domiciled in Louisiana. Plaintiffs purchased a homeowner's policy from Farm Bureau for, *inter alia*, hurricane wind coverage, and they allege that State Farm failed to pay damages caused by wind. *Id.*, Petition, at ¶ 15. Plaintiffs also allege that their damages resulted from a covered peril under the State Farm policy,[7] while State Farm claims that such damages were caused by hurricane driven water, an excluded peril. *See* Answer (Rec.Doc.No. 4).

Plaintiffs specifically allege that:

> the cause of the losses which were sustained due to the breaches in the aforementioned flood walls and which were due to the negligent acts of others, or windstorm, and which are standard covered perils in the policy of insurance issued by defendant to plaintiffs.

*See* Notice of Removal, Petition at ¶ 9 (Rec.Doc.No. 1).

The Court analyzes these two cases together because both sets of Plaintiffs have

---

[5] The object of the *Chamberlain* litigation is the property located at 209 W. Brooks Street, New Orleans, Louisiana 70124. Defendants contend that the property flooded because of "breaks in the levees and floodwalls in St. Bernard, including, but not limited to, the failure of the levee and floodwall in the 17th Street and/or London Avenue Canals which caused flooding throughout New Orleans." Notice of Removal, ¶ 14 (Rec.Doc.No. 1).

[6] *See supra* note 1.

[7] *See* Notice of Removal, Petition, at ¶ 9 (Rec.Doc.No. 1).

4

allegations asserting coverage in their homeowner's policy for flood damage caused by levee breaches, and both Defendant insurers are attempting to remove these actions to federal court under the federal supplemental or piggy-back jurisdiction provided in Section 1441(e)(1)(B). In particular, both ANPAC and Farm Bureau assert jurisdiction under Section 1441(e)(1)(B) averring that they are both defendants in *Abadie et al. v. Aegis Security Ins. Co., et al.*, No. 06-5164 (E.D. La. filed Aug. 28, 2006), and the instant actions arise out of the same "accident" as in *Abadie*.

The Court here seeks to answer the question of whether sections 1369 and 1441(e)(1)(B) apply in the context the New Orleans levee breaches, believing the issue is ripe for disposition in light of the high volume of removals asserting MMTJA jurisdiction pending before this Court and other courts of this district.

## II. LEGAL STANDARD

### A.      Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a)(West 2006). The burden of proof for establishing federal jurisdiction is placed on the party seeking removal. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1998) (*citing Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, (1921)).

If the right to remove is doubtful, the case should be remanded.  *Ryan v. Dow Chemical,* 781 F. Supp. 934, 939 (E.D.N.Y. Jan. 29, 1992). "Statutes conferring removal jurisdiction are strictly construed." *Southall v. St. Paul Travelers Ins. Co.*, 2006 WL 2386365, at *2 (E.D. La. Aug. 16, 2006)(*citing Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 109 (1941); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5ᵗʰ Cir. 1988).

**B.      Piggy-Back Jurisdiction under 28 U.S.C. § 1441(e)(1)(B)**

Defendants contend that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1441(e)(1)(B). The statute provides:

> (e)(1)      Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action tot he district court of the United States for the district and division embracing the place where the action is pending if –
>
> (A)      the action could have been brought in a United States district court under section 1369 of this title; or
>
> (B)      the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

28 U.S.C. § 1441(e)(1) (West 2006).

Under Section 1441(e)(1)(B), an action is removable if (1) the defendant in the action to be removed is also party to an action pending in a district court that could have been brought under 28 U.S.C. § 1369, and (2) the action to be removed arises from the same accident as that

which is pending in the district court. *Id.*; *see also Wallace v. Louisiana Citizens Property Ins. Co.*, 444 F.3d 697, 699 (5th Cir. 2006). Section 1441(e)(1) expands the scope of subject matter jurisdiction conferred by section 1369 as is illustrated by the following comment:

> Specifically, the in-state defendant, previously unable in ordinary diversity cases to remove, is specifically permitted to remove a mass disaster case to federal court. If the defendant is "a party to an action which is or could have been brought" under § 1369, it is removable. If the action involves "the same accident as the action in State court" it is removable, even if the action "could not have been brought in district court as an original matter." (citations omitted).

Peter Adomeit, *The Station Nightclub Fire and Federal Jurisdictional Reach: The Multidistrict, Multiparty, Multiforum Jurisdiction Act of 2002*, 25 W. New. Eng. L. Rev. 243, 250-251 (2003).

This removal statute is often described by the courts as establishing piggy-back jurisdiction or federal supplemental jurisdiction, acting as a complement to the jurisdiction conferred by section 1369 over mass disaster litigation. *Wallace*, 444 F.3d at 702 ("[section 1441(e)(1)(B)] establishes supplemental jurisdiction over the [action to be removed], piggy-backing jurisdiction on the court's original jurisdiction under § 1369(a)."). These terms are used rather loosely, however, in that section 1441(e)(5) states that jurisdiction established under section 1441(e)(1)(B) will be deemed to be the equivalent of original jurisdiction under section 1369.[8]

---

[8] "An action removed under this subsection shall be deemed to be an action under section 1369 and an action in which jurisdiction is based on section 1369 of this title for purposes of this section and sections 1407, 697, and 1785 of this title." 28 U.S.C. § 1441(e)(5). The Fifth Circuit noted that section 1441(e)(5) "merely provides that, for the purposes of certain procedural requirements (venue, service of process, and subpoenas), a case removed under § 1441(e)(1)(B) should be treated as if it were a § 1369 case. It does not trigger the application of the substantive requirements governing the exercise of original jurisdiction under § 1369." *Wallace*, 444 F.3d at 702.

Notwithstanding the inexactness of this terminology, it is useful in that it is descriptive of the kinds of actions to which the removal statute applies. Section 1369 and its corresponding removal statute are meant to foster judicial economy in the resolution of actions involving certain mass disasters by circumventing conventional limitations on federal subject matter jurisdiction. *Wallace*, 444 F.3d at 702. Specifically, the drafters of the MMTJA sought to bypass the complete diversity rule and amount in controversy requirement of 28 U.S.C. § 1332 in order to prevent duplicative litigation in State and federal court, which potentially could lead to inconsistent results. Laura Offenbacher, *The Multiparty, Multiforum Trial Jurisdiction Act: Opening the Door to Cass Action Reform*, 23 Rev. Litig. 177, 185-187 (2004).[9] On the other hand, sidestepping traditional federal jurisdiction requirements, such as the complete diversity rule, and subsequently consolidating mass disaster litigation can potentially "impose a substantial burden on already overwhelmed courts." *Id.*, at 187.

With this backdrop in mind, the Fifth Circuit has indicated that section 1441(e)(1)(B) was intended to apply broadly in the context of mass disaster litigation reasoning the following:

> [T]he MMTJA was designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora. To hamstring the removal statute by misapplying [limitations imposed in section 1369 itself] would undercut the MMTJA's ultimate goal of consolidation.

*Id.*[10] The Fifth Circuit also noted that the congressional intent behind the MMTJA supported

---

[10] Favoring a broad construction of section 1441(e)(1)(B), the Fifth Circuit held in *Wallace* that the mandatory abstention provisions provided in section 1369 did not apply to a court's exercise of jurisdiction over a matter properly brought under section 1441(e)(1)(B).

such a broad construction of section 1441(e)(1)(B), citing the following House report in *Wallace*:

> Current efforts to consolidate all state and federal cases related to a common disaster are incomplete because current federal statutes restrict the ways in which consolidation can occur--apparently without an intention to limit consolidation. For example, plaintiffs who reside in the same state as any one of the defendants cannot file their cases in federal court because of a lack of complete diversity of citizenship, even if all parties to the lawsuit want the case consolidated. For those cases that cannot be brought into the federal system, no legal mechanism exists by which they can be consolidated, as state courts cannot transfer cases across state lines. In sum, full consolidation cannot occur in the absence of federal legislative redress.

*Id.* (*citing* H.R. Rep. No. 106-276, at 7 (1999)).

While a broad interpretation of section 1441(e)(1)(B) is warranted, the statute must be read in tandem with section 1369, which has certain specific jurisdictional elements. In order to establish section 1441(e)(1)(B) piggy-back jurisdiction, the removing party must show that there is a pending action which is or could have been brought, in whole or in part, under section 1369. 28 U.S.C. § 1441(e)(1)(B).

The "could have been brought" language permits the removing party to establish hypothetical jurisdiction with respect to a pending action in order to establish removal subject matter jurisdiction in another action. Moreover, the "in whole or in part" language in section 1441(e)(1)(B) may further broaden the scope of application of section 1369. Although section 1369 requires an action to arise from a "single accident, where at least 75 natural persons have died," section 1441(e)(1)(B) may slightly modify the test for establishing section 1369 jurisdiction for removal purposes, in that, only a *part* of the action pending need arise from a "single accident, where at least 75 natural persons have died." 28 U.S.C. §§ 1369 & 1441(e)(1)(B). In this way, though an action pending in federal district court to which the

9

removing party is a defendant seeks recovery for damages caused by multiple accidents (e.g. multiple levee breaches), the removing party may need only establish that part of the pending action arises from a single accident for the purposes of removal, and the action to be removed arises from the same accident.[11]

Another plausible interpretation of the "in whole or in part" language in section 1441(e)(1)(B) is that it is in reference to an action pending in federal court that contains both claims that do and do not arise out of the "single accident," and these claims are otherwise properly joined in the same action. In this way, the "in whole or in part" language would seem to allow a removing defendant to piggy-back a state court proceeding on an action brought by a plaintiff who asserts multiple related claims, some of which arise out of the "single accident," without the concern that the existence of non-accident related claims in the pending action precludes the exercise of removal subject matter jurisdiction.

Although these two interpretations are not necessarily mutually exclusive, one could certainly take the position that they are. Under the facts plead in the two matters here, the Court need not resolve these questions. For the purposes of this analysis, the Court will assume that the underlying pending action can contain claims arising from multiple accidents, and that the removing party need only show that the action to be removed arises from a "single accident," out of which arises part of the pending action.

Given this backdrop, the Court notes that in recent months, there has been a plethora of removals by homeowner's insurers defending property adjustment claims to federal court

_____

[11] "This [removal] provision functions as a mechanism to consolidate all related claims arising from the same accident."  Offenbacher, 23 Rev. Litig. 177, 195 (2004).

asserting jurisdiction under the MMTJA. The Court recently described the reasons for this trend:

> Certainly, much of the confusion surrounding [the applicability of the MMTJA] arises from *Chehardy v. La. Ins. Comm., et al.*, No. 05-1140 (M.D. La. Mar. 16, 2006).[12] As noted in *Flint*, Judge Polozola did not give written reasons for his finding of jurisdiction under Section 1369. *Flint*, 2006 WL 2375593, at *2; *see also* n.4. Therefore, the Court held that the designation of Hurricane Katrina as an "accident" was only speculation by the Defendants. *Id.*
>
> Moreover, the Fifth Circuit did not address the basis for Section 1369 jurisdiction in *Chehardy*, though it had the opportunity to do so in *Wallace v. Louisiana Citizens Property Ins. Co.*, 444 F.3d 697 (5th Cir. 2006). As noted in *Flint*, the *Wallace* defendants were attempting to establish Section 1441(e)(1)(B) piggy-back jurisdiction to *Chehardy*, which would permit the exercise of federal jurisdiction in *Wallace* if, *inter alia*, the action arose out of the same "accident" as the action in *Chehardy*.[13] While an argument can be made that the Fifth Circuit's acknowledgment of Section 1441(e)(1)(B) supplemental jurisdiction in *Wallace* presupposes original jurisdiction under Section 1369(a) in *Chehardy*, the findings of jurisdictional facts under Section 1369 were left unarticulated by both Judge Polozola and the Fifth Circuit.

*Johnson v. State Farm Fire & Cas. Co.*, No. 06-6248, at *7-8 (E.D. La. Nov. 28, 2006).

The Court here seeks to conduct a comprehensive analysis of the MMTJA as it relates to the New Orleans levee breaches, of course, limiting comment to the facts at hand.

### III. ANALYSIS

---

[12] *Chehardy,* Civil Action Nos. 06-1672, 06-1673, 06-1674, was filed in the United States District Court for the Middle District of Louisiana, and subsequently, transferred to the Eastern District of Louisiana. *Chehardy* is currently pending before this Court. It is worth noting that there were other grounds for subject matter jurisdiction in *Chehardy*, including CAFA.

[13] While the Fifth Circuit notes the petitioners in *Wallace* argue that Hurricane Katrina is the "accident," the Court never actually reaches this conclusion in its decision. 444 F.3d at 699. Additionally, *Wallace* does not directly deal with the application of § 1369(a) jurisdiction, but rather it merely concludes that the abstention provision of § 1369(b) does not apply to cases removed under § 1441(e)(1)(B). *See Flint*, 2006 WL 2375593, at *3.

The ultimate question presented to the Court is whether the actions brought by the Cases and Chamberlains can be removed under section 1441(e)(1)(B). Because of the nascency of the MMTJA and the sparse jurisprudence assaying the statute, there are several issues the Court must consider before it can resolve whether there exists removal jurisdiction over these proceedings. Generally, the resolution of the instant motions can be parsed into two questions, to wit – the Court must decide 1) whether *Abadie* could have been brought under the MMTJA; and 2) whether the *Case* and *Chamberlain* actions arise out of the same "accident" as in *Abadie*.

**A.      Original Jurisdiction under 28 U.S.C. § 1369**

*i.      The MMTJA*

Section 1369 provides in pertinent part:

<blockquote>

(a)      The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if –

(1)      a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

(2)      any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or

(3)      substantial parts of the accident took place in different States.

(b)      The district court shall abstain from hearing any civil

</blockquote>

12

action described in subsection (a) in which –

   (1)     the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens; and

   (2)     the claims asserted will be governed primarily by the laws of that State.

(c)     For the purposes of this section –

   (1)     minimal diversity exists between adverse parties if any party is a citizen of a State and any adverse party is a citizen of another State, a citizen or subject of a foreign state, or a foreign state as defined in section 1603(a) of this title;

   (2)     a corporation is deemed to be a citizen of any State, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business, and is deemed to be a resident of any State in which it is incorporated or licensed to do business or is doing business;

   (3)     the term "injury" means

      (A)  physical harm to a natural person; and

      (B)  physical damage or destruction of tangible property, but only if physical harm described in subparagraph (A) exists;

   (4)     the term "accident" means a sudden accident, or a natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons; and

   (5)     the term "State" includes the District of Columbia, the Commonweath of Puerto Rico, and any territory or possession of the United States.

28 U.S.C. § 1369 (West 2006).

Thus, in order to establish original jurisdiction over *Abadie* under section 1369, the party asserting jurisdiction must show that: 1) there is minimal diversity between adverse parties in *Abadie*; 2) the action in *Abadie*, in whole or in part, arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location; 3) a defendant in *Abadie* resides in a State and a substantial part of the accident took place in another State, or any two defendants in *Abadie* reside in different States, or substantial part of the accident took place in

different states; and 4) the Court is not required to abstain from exercising its section 1369(a) jurisdiction under section 1369(b). 28 U.S.C. §§ 1369 & 1441(e)(1)(B); *see also Flint*, 2006 WL 2375593, at \*2.

Because it is alleged that the plaintiffs in *Abadie* are "Citizens of a State that is different from the State where at least one of the Defendants is incorporated or doing business," the minimal diversity requirement is satisfied. *See Abadie*, No. 06-5164, Complaint at ¶ 6 (Rec.Doc.No. 1). Also, since a substantial part of the accident took place in Louisiana and several *Abadie* defendants are "foreign insurers domiciled in the various states," the third element is also satisfied. *Id.*, Complaint at ¶ 5 (Rec.Doc.No. 1).

Because the fourth prong only need be addressed if the second prong is satisfied, the Court must first consider whether the *Abadie* action arises, in whole or in part, from "a single accident, where at least 75 natural persons have died in the accident at a discrete location." 28 U.S.C. §§ 1369 & 1441(e)(1)(B).

ii.     *The Abadie action*

In *Abadie*, the plaintiffs allege the following:

> There are common questions of law and fact applicable to all class members and defendants and which predominate over individual questions which include but are not limited to the legal determination of whether the efficient proximate cause of losses suffered as a result of water entering the City of New Orleans and surrounding parishes on August 29, 2005 from breaches in the levees and levee walls along the 17th Street Canal, the London Avenue Canal, the Industrial Canal, and elsewhere were standard covered perils in the insurance company defendants' homeowners insurance policies.

14

*Id.*, Complaint at ¶ 9 (Rec.Doc.No. 1). Moreover, the *Abadie* plaintiffs further contend:

> [N]ot withstanding the specific topographic townsite of the Greater
> New Orleans Metropolitan Area specifically known [the
> homeowner's insurers] notwithstanding their advanced knowledge
> about the fragility of the New Orleans area levee systems, and in
> contrast to other insurance policies available in the market, at no time
> did they specifically exclude from coverage the breaking or failure of
> boundaries and levees of lakes, rivers, streams, or other bodies of
> water.

*Id.*, Complaint at ¶ 14 (Rec.Doc.No. 1).

Thus, the relevant allegations made in the *Abadie* action can be summarized as claims against homeowner's insurers for coverage under the respective insurance policies for property damage to the plaintiffs' homes caused by flooding from the levee breaches. Defendants maintain that *Abadie* could have been brought originally under 28 U.S.C. § 1369, despite the fact that the *Abadie* Complaint contains no such allegation.[14] Of course, the exercise of jurisdiction is permitted if Defendants can establish that *Abadie* could have been brought under section 1369. 28 U.S.C. § 1441(e)(1)(B); *see also Wallace v. Louisiana Citizens Property Ins. Co.*, 444 F.3d 697, 699 (5th Cir. 2006).

Although many courts in this District have been presented with cases involving the MMTJA and its complementary piggy-back removal statute, no court has comprehensively confronted these statutes as it relates to the levee breaches. Overwhelmingly, the courts of this district have held that Hurricane Katrina itself was not an accident under section 1369.[15] The

---

[14] The *Abadie* plaintiffs assert that jurisdiction exists under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005. *Abadie*, Compl., at ¶ 6 (Rec.Doc.No. 1).

[15] Nearly all of the cases that have previously come before the courts of this District have dealt with whether Hurricane Katrina, and not a levee breach, is an "accident" under section 1369. *See, for example, Flint v. Louisiana Farm Bureau Mut. Ins. Co.*, 2006 WL 2375593, (E.D.

instant motions to remand provide the Court with the factual allegations that provide the occasion for the Court to answer question concerning the MMTJA and its role in the New Orleans levee breach litigation. That is, these cases involve Plaintiffs who bring causes of action arising out of damages caused by a levee breach or levee breaches, and there exists no other potential grounds for the exercise of federal subject matter jurisdiction other than under sections 1369 or 1441(e)(1)(B).

To the best of its knowledge, the Court knows of no other cases discussing whether a levee breach constitutes an "accident' under the MMTJA except that of *Carroll v. Lafayette Ins. Co.*, 2006 WL 2663013 (Sept. 14, 2006) (Lemelle, J.). In *Carroll*, Judge Lemelle held that there was no subject matter jurisdiction under sections 1369 or 1441(e)(1)(B) because plaintiffs' action "[arose] out of a series of events culminating in multiple accidents" as opposed to a single accident as is required by the MMTJA. *Carroll*, 2006 WL 2663103, at *3. Moreover, Judge Lemelle held that the "accident" did not occur at a "discrete location" because there were

---

La. Aug. 15, 2006).  *Southern Athletic Club, L.L.C. v Hanover Ins. Co.*, 2006 WL 2583406 (E.D. La. Sep. 6, 2006); *Fradella's Collision v. Lafayette Ins. Co.*, 2006 WL 3258332 (E.D. La. Oct. 30, 2006); *Fidelity Homestead Assoc. v. Hanover Ins. Co.*, 2006 WL 287352 (E.D. La. Oct. 5, 2006). *Jackson v. State Fire & Cas. Ins. Co.*, 2006 WL 3332835 (E.D. La. Nov. 9, 2006); *M. Robert Enterprises, Inc. v. United Fire and Cas. Co.*, 2006 WL 3344688 (E.D. La. Nov. 15, 2006); *Haas v. Lafayette Ins. Co.*, 2006 WL 3437498 (E.D. La. Nov. 27, 2006).

"multiple breaches at several locations not discrete." *Id.*[16,17]  The facts plead in the instant cases require this Court to engage in a robust analysis of the MMTJA in order to clarify the role of the MMTJA in some of the litigation that has spawned from Hurricane Katrina.

### iii.    Interpretation of Federal Statutes

When interpreting a statute, courts must begin with an analysis of the statute's actual words because when "the language of the federal statute is plain and unambiguous, it begins and ends [the court's] inquiry." *United States v. Osborne,* 262 F.3d 486, 490 (5th Cir.2001). The court may only refer to legislative history for congressional intent when the statute is unclear or ambiguous. *Free v. Abbott Laboratories,* 51 F.3d 524, 528 (5th Cir.1995). "[A]s in any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress." *In re Universal Seismic Assocs.,* 288 F.3d 205, 207 (5th Cir.2002) (*quoting Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 909 (5th

---

[16] Judge Lemelle also held that the *Carroll* defendant had not shown minimal diversity existed among adverse parties as is required by section 1369. *Carroll,* 2006 WL 2663103, at *3. However, the *Carroll* defendant need only have shown that the action to be removed arose out of the same accident as the action over which it was seeking to establish piggy-back jurisdiction. *See* 28 U.S.C. § 1441(e)(1)(B) (action can be removed if it "arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.")

[17] Another question that emanates from the gloss of the MMTJA relates to the degree of connexity between the "accident," the "discrete location," and the seventy-five deaths. The question is whether the "accident" must occur at a "discrete location" or whether the seventy-five deaths must occur at a "discrete location" or both. Judge Lemelle's conclusion that the "accident" must occur at a "discrete location" is reasonable, but the Court suggests that under the facts plead in these cases challenges to such an interpretation are not so easily dismissed.

17

Cir.1994)). Statutory language reflects the intention of Congress, and "Congress' intention is the law and must be followed." *Blue Cross & Blue Shield v. Shalala*, 995 F.2d 70, 73 (5th Cir.1993).

"In all cases involving statutory construction, [the court's] starting point must be the language employed by Congress, ⋯ and [the court] assume[s] that the legislative purpose is expressed by the ordinary meaning of the words used." *INS v. Phinpathya,* 464 U.S. 183, 189, 104 S.Ct. 584, 589, 78 L.Ed.2d 401 (1984). "The canons of statutory construction dictate that when construing a statute, the court should give words their ordinary meaning and should not render as meaningless the language of the statute." *White v. Black*, 190 F.3d 366, 368 (5th Cir.1999). Dictionaries provide a "principle source for ascertaining the ordinary meaning of statutory language." *Thompson v. Goetzmann,* 337 F.3d 489, 498 n. 20 (5th Cir.2003).

    *iv.*     *Single Accident*

Section 1369(a) permits federal courts to exercise subject matter jurisdiction if it is established, *inter alia*, that the action "arises from a single accident..." 28 U.S.C. § 1369(a). The statute supplies its own definition of an accident as "a sudden accident, or a natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons." 28 U.S.C. § 1369(c)(4). Needless to say, Hurricane Katrina was a natural event that resulted in massive damage to the metro New Orleans area as well as to much of the Gulf of Mexico region. Because the hurricane set in motion the events leading up to the devastation, however, does not make it appropriate to label the damage as a "single accident," as such would be a gross understatement.

18

The Court, thus, must look to the congressional intent to give content to the term "single accident." Sections 1369 and 1441(e)(1)(B) were enacted in 2002 with no debate.[18] *See also* Offenbacher, 23 Rev. Litig. 177, 178. Prior versions of the statute, however, were discussed on the House floor with remarks particularly focusing on the term accident, as is illustrated by the following comment:

> As defined in this section, "accident" must be sudden in nature, may include natural events culminating in accidents, and must occur in a discrete location. Thus, the bill is intended to apply to those events in which 25 or more persons are killed or injured together in a single, catastrophic accident, such as a hotel fire, a railroad, airplane or bus accident, or a bridge collapse. The reference

---

[18] **Sec. 11020. Multiparty, Multiforum Trial Jurisdiction Act of 2002**: Section 11020 would streamline the process by which multidistrict litigation governing disasters are adjudicated. This section would save litigants time and money, but would not interfere with jury verdicts or compensation rates for attorneys. The genesis of S 11020 of the conference report took place during oversight hearings conducted in the 95th Congress by the House Subcommittee on Courts, Civil Liberties and the Administration of Justice (now Courts, the Internet and Intellectual Property). These efforts were joined by those of the Carter Administration to improve judicial machinery by abolishing diversity of citizenship jurisdiction and to delineate the jurisdictional responsibilities of state and federal courts. Following Senate opposition to such expansive change, the Subcommittee narrowed its focus and began to concentrate on the problem of dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries.

Legislation on this more specific issue was first introduced in both the 98th and 99th Congresses. The House of Representatives subsequently approved legislation highly similar to S 11020 of the conference report in the 101st and 102nd Congresses; and the full House Committee on the Judiciary favorably reported this language in the 103rd Congress as well. Moreover, S 11020 of the conference report is highly similar to that set forth in S 10 of the Subcommittee substitute to H.R. 1252, the "Judicial Reform Act," from the 105th Congress, which the House passed in amended form with S 10 fully intact. In addition, during the 106th Congress the House of Representatives passed the precursor to S 11020 of the conference report, H.R. 2112, by voice vote under suspension of the rules. Section 11020 of the conference report is now largely culled from of H.R. 860, which the House passed under suspension of the rules on March 14, 2001. No hearings on H.R. 860 were held in the 107th Congress given the ample legislative history that preceded it from the 95th Congress through the 106th. The Judicial Conference and the Department of Justice have also supported these previous legislative initiatives. H.R. Rep. No. 107-685, at 199 (2002) (Conf. Rep.).

to natural events is inserted to ensure that an accident such as a bridge collapse qualifies as an accident within the scope of the bill, notwithstanding that the collapse was caused by long-term flooding, foundation shifting or other natural events that precipitate a sudden accident, but arguably are not "sudden" in and of themselves.

Given this definition of accident, the bill does not apply to ordinary product liability actions, including failure to warn actions and design defect cases involving multiple, identically manufactured units, because the injuries in such actions do not usually occur in a large number together in a single accident. Therefore, the term "accident" does not include the act of or a decision relating to designing, manufacturing, labeling, packaging, testing or filing reports with Federal agencies with respect to any product. Of course, defectively manufactured, designed or labeled products may cause an "accident" within the meaning of the bill. For example, a defectively designed sprinkler system may fail to put out a hotel fire. To that limited extent the bill would reach suits raising product liability issues. The Committee has, however, strived to limit the scope of this bill so that it could be interpreted to apply to ordinary product liability actions, and believes that language of the bill is now sufficiently clear in that regard.

H.R. Rep. No. 102-373 (1991).[19],[20] There was concerted effort to limit the scope of the term "accident" so that the statute would apply to certain kinds of mass disasters, excluding, in particular, its application to products liability actions and toxic torts.[21]

---

[19] The enacted version of the statute changed the amount of deaths from twenty-five to seventy-five, further limiting the kind of accident to which the MMTJA applies. The purpose of this increasing the amount of deaths was to address concerns that the statute with its minimal diversity provision would substantially increase the amount of litigation in federal courts. Offenbacher, 23 Rev. Litig. 177, 188.

[20] Taking the statement as a whole, the last sentence of the above excerpt presumably should read, "...should *not* be interpreted to apply to ordinary product liability actions."

[21] "The special Federal court jurisdiction created by H.R. 3406 would only apply to those unusual events in which 25 or more persons are killed or injured together in a single, catastrophic accident-such as a plane crash or a hotel fire. Further, the term "single accident" does not include any occurrence such as a decision related to the design, manufacture, labeling or packaging of a product. Nor does it include any occurrence related to testing or reporting in connection with obtaining Federal regulatory agency review or approval of a product." 136 Cong. Rec. H3116-18 (daily ed. June 5, 1990) (statement of Rep. Fish)

The question, thus, is whether *Abadie* action arose out of, at least in part, a "single accident" for the purpose of establishing piggy-back jurisdiction. Here, it is certainly arguable that one levee breach is a single accident under the MMTJA. The natural event that culminated in the levee breaches was, of course, Hurricane Katrina, though the hurricane itself was not an accident.[22] *Abadie* involves multiple levee breaches, all of which individually, may constitute "single accidents."

For the purposes of this analysis the Court will assume that section 1369 jurisdiction is available for the *Abadie* action despite it involving multiple accidents, and that a "single accidents," that gives rise to part of the entire action may be piggy-backed upon. Generally, section 1441(e)(1)(B) permits removal if the action to be removed arises out of the same accident as that pending in federal court for which there exists section 1369 jurisdiction. 28 U.S.C. § 1441(e)(1)(B). This requires the removing party to identify the "single accident," if such is not facially apparent, that gives rise both to the pending action and the action to be removed. If multiple accidents exists, as in *Abadie*, a removing party must 1) identify a "single accident;" 2) show that section 1369 jurisdiction exists with respect to the claims arising out of that "single accident;" and 3) show that the action to be removed also arises out of that identified "single accident."[23]

---

[22] The courts of the Eastern District of Louisiana have overwhelmingly held that Hurricane Katrina was not an "accident" for the purposes of sections 1369 and 1441(e)(1). *See supra* note 15.

[23] Section 1441(e)(1)(B) also requires that the defendant be "a party to an action which is or could have been brought, in whole or in part, under section 1369." 28 U.S.C. § 1441(e)(1)(B). In the case of multiple accidents cumulated into one action, as in *Abadie*, this provision could be construed as requiring the defendant to not only be a mere party to the pending action, but in fact, be a party to the action that arises out of the "single accident" in order to have standing to

Both Plaintiffs in the matters before the Court allege damages out of multiple levee breaches, which do not constitute a "single accident" under the MMTJA. The *Case* Defendant ANPAC argues that the breaches that occurred at various points of the New Orleans levee system constituted a single accident because the levees make up one system.[24] The Chamberlains are more precise, alleging that their damages were caused by the single accident that was the breaches in the 17th Street Canal and/or the London Avenue Canal. *See* Notice of Removal, ¶ 14 (Rec.Doc.No. 1). Despite allegations of varying specificity, it is clear that both proceedings involve multiple levee breaches.

Interpreting the term "single accident" so broadly as providing for multiple levee breaches does not coincide with the purposes of the MMTJA. That is, section 1369 was meant to facilitate the consolidation of multiple actions that present identical issues of liability and causation of damages into one convenient forum. The following statement articulates this idea:

> [The MMTJA] would rectify a critical shortcoming in the ability of our judicial system to consolidate scattered litigation. Whenever a plane crashes, a bridge collapses, or a hotel burns, a myriad of lawsuits are filed in State and Federal courts. Although these suits present identical issues of liability, under current law, there is often no way in which such suits can be consolidated for resolution by a single court. As a consequence, multiple courts must resolve the

---

remove under section 1441(e)(1)(B). For example, assuming for arguments sake that the 17th Street Canal breach was a "single accident," section 1441(e)(1)(B) requires that 1) the defendant must be removing an action arising out of the 17th Street Canal breach; and 2) also be a party to the part of the pending action that also arises out of the 17th Street Canal breach. This would be distinct from the situation where a defendant is party to the part of the pending action that arises out of some other levee breach, and is attempting to remove an action that arises out of the 17th Street Canal breach.

[24] Defendant ANPAC made such an argument both at Oral Argument held before the Court on November 15, 2006 (*See* Rec.Doc.No. 12), and in its opposition to the instant motion (*See* Opp. Mot. Remand, at p. 8 (Rec.Doc.No. 8)).

> identical issues multiple times, thereby wasting judicial resources and
> increasing the risk of inconsistent results. This bill would facilitate
> the consolidation of related State and Federal cases arising out of a
> single accident in which many people are killed or injured.

136 Cong. Rec. H3116-17 (daily ed. June 5, 1990) (statement of Rep. Kastenmeier).

While the breaches occurred at several points along one levee system as the *Case*

Defendant suggests, the causes for each of the failures involve separate and distinct factual

inquiries, and the causation of individual damages presents unique questions of fact as to each

claimant.

For example, the breach at the 17th Street Canal could have been a result of poor

maintenance, while a breach elsewhere could have been because of poor construction or design.

Further still, there might be a finding that the flooding overtopped the levees at a particular point

and there was no negligence involved. Consolidation of cases where there exist such distinct

issues of liability and causation of damages among the plaintiffs would not prevent duplicative

litigation in State and federal court or otherwise foster judicial economy. In this way, the

questions of fact presented by the multiple levee breaches are not identical, which justifies

narrowly construing section 1369 so as to preclude labeling multiple levee breaches as a "single

accident" for purposes of the MMTJA.

Because the *Case* Plaintiffs and *Chamberlain* Plaintiffs respectively bring actions arising

out of multiple levee breaches, this precludes the possibility that these actions arose out of the

same "single accident" that gives rise to part of the action in *Abadie*. There is no language in

section 1441(e)(1)(B), which would suggest that only part of the action to be removed need arise

from the "single accident" that triggers jurisdiction under the MMTJA. Rather, the requirement

is that the removing party must show that the action pending in federal court "arises from the

23

same accident as the action in State court." 28 U.S.C. § 1441(e)(1)(B). That is, the "single accident" must make up at least a part of the *Abadie* action, and the action to be removed must arise out of that same "single accident." Therefore, assuming that the *Abadie* action arises, in part, out of a "single accident," the Court finds here that the *Case* and *Chamberlain* actions do not respectively arise out of the same "single accident" that makes up a part of the *Abadie* action, which precludes the Court's exercise of removal subject matter jurisdiction under section 1441(e)(1)(B).

> v.       *75 Deaths at a Discrete Location*

After considering whether the *Abadie* action arises, in whole or in part, out of a single accident, the Court must then determine whether the accident was such, "where at least 75 natural persons have died in the accident at a discrete location." 28 U.S.C. § 1369(a). This question requires the Court to engage in jurisdictional factfinding; however, the statute does not provide the legal standard for the burden of proof placed upon the removing party. The Court finds that the appropriate standard is that which is typically used in establishing facts when there has been no evidentiary hearing on the jurisdictional matter, to wit – the burdened party must make a *prima facie* showing that the facts exist making the exercise of subject matter jurisdiction appropriate. *See Kwik-Copy Corp. v. Byers*, 37 Fed. Appx. 90 (5th Cir. 2002).

In *Kwik-Copy,* the Fifth Circuit was faced with determining whether there existed personal jurisdiction over the defendant. The court reasoned:

> When alleged jurisdictional facts are disputed, all factual conflicts are resolved in favor of the party seeking to invoke the court's

24

> jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).
> While plaintiff carries the burden of establishing a court's jurisdiction
> over a nonresident, the standard of proof that must be satisfied
> depends on whether the district court conducted an evidentiary
> hearing before its consideration of jurisdictional issues.

*Kwik-Copy*, 2002 WL 1021889, at *2 (5th Cir. 2002). Being that there was no evidentiary

hearing, the *Kwik-Copy* court concluded that the burdened party must make a *prima facie* case

that personal jurisdiction exists. *Id.*, at *3.

In *Bullion*, the Fifth Circuit articulated how a court determines whether a party has made

a *prima facie* showing of jurisdiction, holding that "uncontroverted allegations in the plaintiff's

complaint must be taken as true, and conflicts between the facts contained in the parties'

affidavits must be resolved in the plaintiff's favor for the purposes of determining whether a

*prima facie* case for [jurisdiction] exists." *Bullion*, 895 F.2d at 217 (citations omitted).

Applying this burden of proof by analogy to the instant motion to remand, the Court finds

that both ANPAC and Farm Bureau have not made a *prima facie* showing that seventy-five

people have died at a discrete location due to a "single accident."

The term "discrete location" has no definition within the statute, and in fact, the statutory

language is arguably ambiguous. In section 1369(a), the phrase "at a discrete location"

grammatically modifies the word "accident" and/or the phrase "where at least 75 natural persons

have died." 28 U.S.C. § 1369(a). This implies either that the accident must occur at a discrete

location, or that the deaths must occur at a discrete location, or that both the accident and the

deaths must occur at a discrete location. Whereas, in section 1369(c)(4), which defines the term

accident, the phrase "incurred at a discrete location" clearly is intended to reference the deaths.

In this way, "[w]hile the accident may not need to be localized, the plain language of the statute

requires that the deaths resulting from the accident must occur at a discrete location." *Preston v.*

*Tenet Healthsystem Memorial Medical Center, Inc.*, 2006 WL 3396171, at *6 (E.D. La. Nov. 21,

2006).

The term "discrete location" also was not commented upon during the congressional

hearings concerning the MMTJA; however, there seems present a general assumption that the

accident and deaths must occur at a discrete location. Offenbacher, 23 Rev. Litig. 177, 192. The

House Report issued with the legislation illustrates this assumption – "As defined in this section,

'accident' must be sudden in nature, may include natural events culminating in accidents, and

must occur in a discrete location." H.R. Rep. No. 102-373 (1991). This notion is further

evidenced by the following comment:

> The legislative history [of the MMTJA] does not discuss the meaning
> of "discrete location," but the legal term discrete means separate or
> distinct. This suggests that the accident must occur at an identifiable
> location, which is probably another way to ensure that only specific
> one-time incidents are covered by the general provision.

Offenbacher, 23 Rev. Litig. 177, 192. Such an assumption is indeed consistent with the

proposition that Congress intended the statute to apply narrowly bringing only certain kinds of

mass disasters within the scope of section 1369.

On the other hand, the plain language of the statute does not require the Court to make

such an assumption. While this contradiction might be problematic in certain factual

circumstances, it presents no impediment to the disposition of the instant matter because

Defendants have not shown that the seventy-five deaths occurred at a discrete location.

As with many other aspects of the MMTJA, there is a lack of jurisprudence that gives

content to the term "discrete location." In a recent case, the Honorable Judge Fallon held that

"while it is undisputed that at least 75 deaths occurred following Hurricane Katrina," the proposition that the metro New Orleans area constitutes a "discrete location," is "untenable and would effectively deprive the Louisiana state courts of jurisdiction over any dispute related to Hurricane Katrina." *Preston*, 2006 WL 3396171, at *6. In *Preston*, the court was presented with a lawsuit initiated to recover for injuries and deaths of patients at Memorial Medical Center in New Orleans in the aftermath of Hurricane Katrina.[25] *Id*., at *1. Judge Fallon held that the approximately thirty-five deaths that occurred at the hospital was not sufficient to establish jurisdiction under the MMTJA because the hospital itself was the discrete location for the purposes of section 1369. *Id.*, at *6. Based on the reasoning of Judge Fallon, the Court also finds that the metro area of New Orleans is not a discrete location for the purposes of the MMTJA.

In the matter before the Court, both sets of plaintiffs bring essentially property adjustment claims against their respective homeowner's insurers for alleged covered damages to their homes. Implicitly, Defendants argue that the term "discrete location" should not be limited to the property in dispute; however, Defendants do not suggest what should bound this term. Because Hurricane Katrina caused breaches throughout New Orleans, the resolution of whether or not seventy-five deaths occurred at a discrete location presents a quagmire of proof. It is

---

[25] Perhaps, if at least seventy-five people had died at the hospital, the court would have been faced with having to resolve whether the accident (i.e., levee breach) and the deaths had to occur at a discrete location. Certainly, the effects of the accident reached the hospital, but otherwise the accident and the deaths occur at distinct locations. Holding that the accident and deaths do not have to occur at a discrete location would that mean that all actions arising from that particular levee breach could then be consolidated into one court through the establishment of piggy-back jurisdiction, including insurance adjustment claims unrelated to the hospital deaths. This would present a court with a series of cases with wholly separate questions of fact and law. Such a result highlights the fact that the statute is drafted poorly, in that, its scope would have to be limited not by the plain language of its provisions, but by general comments made on the floor of Congress, in order for the statute to function as it was intended.

undisputed that more than seventy-five people died during and in the aftermath of Hurricane Katrina, but the Court cannot determine location or the cause of the deaths without what would be practically equivalent to a trial. Indeed, there may have been seventy-five deaths at a discrete location; however, the Court would have to determine that a single accident caused these deaths, and at a minimum, that the deaths occurred at a discrete location. Defendants can only speculate as to where the deaths occurred or what caused the deaths. Speculation is not sufficient in making a *prima facie* showing of section 1369 jurisdiction. Thus, the Court finds that Defendants have not made a *prima facie* showing that at least seventy-five deaths occurred at a discrete location in a single accident.

Remembering that Defendants are attempting to establish hypothetical jurisdiction in *Abadie*, where there is no allegation that section 1369 jurisdiction exists, the Court, moreover, finds that the impracticality of finding that at least seventy-five deaths occurred at a discrete location due to the levee breach or breaches illustrates that a single levee breach resulting in widespread flooding is not the kind of accident that was meant to come within the scope of the MMTJA, unless certain circumstances exist.

In order for a levee breach to be the kind of accident intended to fall within the scope of section 1369, there would have to be at least seventy-five deaths that occur at a discrete location due to the breach. The term discrete location would be bounded not physically, but by whether there exist common questions of fact among claimants as to liability and/or causation of damages. This limitation of what constitutes a "discrete location" would preclude the exercise of section 1369 jurisdiction over actions arising out of "single accidents" that have widespread damages, and deaths that occur in a number of places and for different reasons, though the

accident might precipitate such deaths.

Moreover, for purposes of removal, the action to be removed would also need to arise out of the accident that caused the deaths at a discrete location, and not merely out of the "single accident" that causes diffuse damages, even if at least seventy-five people die. For example, the action to be removed would have to arise out of a levee breach that caused seventy-five deaths at a hospital in order to be removable under section 1441(e)(1)(B).

This proposition is further buttressed by the fact that section 1369(c)(4) defines an "accident" as "a natural event culminating in an accident, that results in *death incurred at a discrete location by at least 75 natural persons*." 28  U.S.C. § 1369 (c)(4) (emphasis added). The emphasized language is included as part of the definition of the term "accident," and thus, could be transplanted to section 1441(e)(1)(B) as well.[26] In other words, the statute contemplates that an "accident" is of a specific kind, and must result in seventy-five deaths at a discrete location in order to be an "accident" for the purposes of the MMTJA. A contrary holding would not serve judicial economy and would overburden a court with an array actions presenting a multitude of wholly unrelated questions of fact.

As a final note, Defendants argued during oral argument that the statute does contemplate such large-scale disasters as indicated in sections 1369(3), which explicitly provides for an

---

[26] The language "at a discrete location by at least 75 natural persons" is represented in section 1369(a), which is the substantive portion of the statute and in the definition of the word accident. At first glance, this might seem redundant; however, the Court finds that its inclusion is not mere surplusage and the language was meant to limit the word "accident" itself, even as used in section 1441(e)(1)(B).

accident occurring in multiple states.[27] However, this language was not meant to broaden the

scope of the word "accident" as is explained in the following commentary that was given during

Congress's consideration of a predecessor of section 1369:

> I note the language in section 3 of the bill, referring to a "substantial
> part" of an accident. That is only intended to address the highly
> unusual circumstance, where an accident otherwise covered by the
> legislation, would occur in more than one judicial district-such as a
> mid-air plane crash that occurs above the border of two States. That
> language is not intended to otherwise expand the meaning of the term
> "accident."

136 Cong. Rec. H3116-18 (daily ed. June 5, 1990) (statement of Rep. Fish).

The Court admits that the plain language of the statute is problematic, in that, it is not as

narrowly crafted as intended by Congress. Fortunately, the Court need not resolve this dilemma

with respect to the breadth of the word accident because it is clear that the Defendants have not

met their burden of proof that seventy-five people have died at a discrete location due to a single

accident. Even if they had, however, the Court finds that a levee breach causing widespread

damage, including death, is not the kind of accident contemplated by the drafters of the MMTJA

because the deaths do not occur at a discrete location.

The statute was clearly meant to foster judicial economy and provide jurisdiction in

accidents such as an airplane crash, bridge collapses, hotel fires, and train wrecks, where fault is

presumed just as in a *res ipsa loquitur* tort action. However, when there are multiple levee

breaches, i.e. multiple accidents, where liability is not presumed and the question of causation of

damages is not identical among claimants, judicial economy would not be served through

_____

[27] "substantial parts of the accident took place in different States." 28 U.S.C. §
1369(a)(3).

consolidation of these actions. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Remand (Rec.Doc.No. 5) in Civil Action No. 06-7390 is hereby **GRANTED** and the proceeding is **REMANDED** to state court.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Remand (Rec.Doc.No. 1497) in Civil Action No. 05-4182 (pertaining to No. 06-6479) is hereby **GRANTED** and the proceeding is **REMANDED** to state court.

New Orleans, Louisiana, on this  12th day of December, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**